UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 05-CV-3143 (JFB) (AKT)

———————————

BRUCE WILSON,

Plaintiff,

VERSUS

MICHELLE J. PESSAH, ESQ., AND TABAT, COHEN & BLUM, LLP,

Defendants.

———————————

MEMORANDUM AND ORDER
March 8, 2007

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Bruce Wilson ("Wilson") brings this diversity action against Michelle J. Pessah ("Pessah") and her law firm, Tabat, Cohen & Blum, LLP (the "Firm"), alleging violations of New York Judiciary Law § 487 and the New York State Lawyer's Code of Professional Responsibility.[1] Specifically, plaintiff alleges that Pessah and the Firm deceived the court during their representation of plaintiff's wife in a matrimonial action in New York Supreme Court, Suffolk County.

Presently before the Court is defendants' unopposed motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated below, defendants' motion is granted.

———

[1] Wilson is a resident of Massachusetts; defendants are residents of New York.

I. BACKGROUND

A. Procedural History

Plaintiff filed a complaint in this action on June 29, 2005. At a discovery conference on September 9, 2005, Magistrate Judge Orenstein stayed discovery. On October 20, 2005, defendants moved for summary judgment. Plaintiff did not file an opposition, and on April 19, 2006, Judge Seybert granted plaintiff additional time, until May 15, 2006, to file an opposition. Again, plaintiff failed to submit an opposition to defendants' motion.

On May 25, 2006, the case was reassigned to this Court. By Memorandum and Order dated September 15, 2006, this Court denied defendants' unopposed motion for summary judgment without prejudice. Specifically, the Court dismissed defendants' motion because it failed to comply with Local Civil Rules 56.1 and 56.2 requiring defendants,

respectively, to submit a statement of material facts with their motion and to serve a "Notice to Pro Se Litigants Opposing Summary Judgment" upon plaintiff along with their motion. (*See* Memorandum and Order dated Sept. 15, 2006 (hereinafter, "September 15 Order") at 2-3.)

In its Order, the Court established a briefing schedule for defendants' second motion for summary judgment as follows:

> Defendants' motion for summary judgment shall be filed no later than September 29, 2006. *Pro se* plaintiff shall file his opposition papers no later than October 27, 2006. If opposition papers are filed, defendants shall file reply papers no later than November 10, 2006. Unless either party requests oral argument by November 10, 2006, the Court will consider the matter based upon the parties' submissions. It is further ordered that if *pro se* plaintiff fails to file opposition papers or seek an extension of time by October 27, 2006, no reply shall be filed, and this Court will deem the motion fully submitted.

(Sept. 15 Order at 3.)

On September 29, 2006, defendants filed a second motion for summary judgment, and served it on plaintiff at his home.[2] Along with the motion, defendants served on plaintiff, pursuant to Local Civil Rule 56.2, a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" that instructed plaintiff, *inter alia*, that "[t]he claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion. . . . If you do not respond to the motion for summary judgment on time . . . the court may accept defendant's factual assertions as true." (Notice to Pro Se Litigant dated Sept. 28, 2006, at 2.) This action provided actual notice to plaintiff of the consequences of non-compliance with the requirements of Rule 56.

Subsequently, plaintiff failed to submit a response to defendants' motion by October 27, 2006 – the deadline set forth in the September 15 Order. In an Order dated February 14, 2007, the Court afforded plaintiff an additional opportunity to explain his failure to respond to the instant motion. Plaintiff responded to the Order by requesting an additional five days, to February 28, 2007, to prepare and to submit his response to defendants' motion. In an abundance of caution, the Court afforded plaintiff an additional seven days, until March 2, 2007, to submit his response. As has become routine in this case, plaintiff failed to meet the deadline set by the Court or to offer any explanation for that failure.

At this time, five days since the expiration of the most recent deadline for the submission of plaintiff's response to the instant motion, plaintiff has failed to request an extension of time to respond to defendants' motion. Moreover, even assuming that plaintiff had made such a request, the Court finds that it would be futile to extend any further opportunities for plaintiff to respond. Plaintiff has missed all five deadlines for the submission of his response to defendants' two motions for summary judgment. Even in light of the considerable latitude that should be afforded to *pro se* litigants in complying with

---

[2] After carefully reviewing defendants' submissions, the Court finds that defendants' second motion for summary judgment complies with all applicable Local Civil Rules, including Rules 56.1 and 56.2.

scheduling orders, plaintiff's repeated failures to respond to this Court's directives can no longer be tolerated. Further extensions of time for plaintiff to file his response to the instant motion would almost certainly result in nothing more than further unexplained delays in the final disposition of this case. Accordingly, the Court now treats the instant motion for summary judgment as unopposed. *See, e.g., Wilson v. New York City Dep't of Transp.*, No. 01 Civ. 7398 (RJH), 2005 WL 2385866, at *1 (S.D.N.Y. Sept. 28, 2005) (treating defendant's motion for summary judgment as unopposed where plaintiff "has failed to meet numerous deadlines . . . and has failed to file a timely opposition to the [defendant's] summary judgment motion); *cf. Wiltshire v. Consol. Edison of New York*, 1994 WL 637764, at *1 (granting defendant's summary judgment motion on default where *pro se* plaintiff failed to file his response despite several extensions)

### B. Facts

The facts, undisputed by plaintiff, are provided below. For the purposes of this motion, the Court notes that it has construed the facts in the light most favorable to the non-moving party - in this case, the plaintiff - "with all factual ambiguities resolved and all reasonable inferences drawn in his favor."[3]

---

[3] Defendants submitted a statement, pursuant to Local Civil Rule 56.1, which asserts material facts which they claim are undisputed in this case. As discussed *supra*, defendants also complied with Local Civil Rule 56.2 by providing notice to plaintiff that he is not entitled to simply rely on allegations in his complaint, but is required to submit evidence, including sworn affidavits, witness statements and documents to respond to the motion for summary judgment, pursuant to Fed. R. Civ. P. 56(e). (*See* Notice to Pro Se

*Capobianco v. City of New York*, 422 F.3d 47, 50 n. 1 (2d Cir.2000) (citations omitted).

On February 24, 2004, Margaret Wilson ("Margaret") retained the Firm to represent her in a divorce action against plaintiff. (Pessah Aff. ¶ 2.) Pessah, as an attorney employed by the Firm, served as Margaret's

---

Litigant dated Sept. 28, 2006.) This action provided actual notice to plaintiff of the consequences of non-compliance with the requirements of Fed. R. Civ. P. 56. *See, e. g., Irby v. N.Y. Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56. . . . [E]ither the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56. . . . In the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."). Therefore, the Court accepts the facts recited in defendants' Rule 56.1 Statement, the affidavit of Pessah, or exhibits thereto, as true where such facts are supported by the record. *See, e.g., Pierre-Antoine v. City of New York*, No. 04 Civ. 6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006) (deeming facts in defendants' Rule 56.1 statement as admitted by *pro se* plaintiff, where plaintiff was provided notice of failing to properly respond to summary judgment motion under Local Civil Rule 56.2 and the court's review of record did not reveal that there was a genuine issue of material fact); *Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03 Civ. 7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005) (deeming defendants' factual assertions admitted where *pro se* plaintiff was provided with notice under Local Civil Rule 56.2 and where plaintiff did not submit evidence controverting those factual assertions).

3

representative in the divorce action. (Dfts.' Stmt. of Material Facts (hereinafter, "Dfts.' Stmt.") ¶ 2.)

Margaret filed for divorce on March 9, 2004 in the New York Supreme Court, Suffolk County, under Index No. 2004-03914. (*Id.* ¶¶ 2-3.) Subsequently, Margaret submitted a *pendente lite* motion to the state court that sought, *inter alia*, support payments from Wilson allegedly needed to "enable the poorer spouse [Margaret] to meet his or her needs during the pendency of a matrimonial action." (Pessah Aff. Ex. B.) Attached as exhibit F to the *pendente lite* motion was a "Statement of Net Worth" (the "Net Worth Statement") signed by Margaret and by Pessah, as attorney for Margaret. (*Id.*) The Net Worth Statement provided information about Margaret's and Wilson's respective incomes and assets. (*Id.*) Of particular relevance to the instant motion, the Net Worth Statement provided that Margaret and Wilson "each have their own shares" of "Westmoreland stock," and listed the "price or value" of those shares as "Unknown." (*Id.*; Compl. Ex. 3.) Subsequently, according to defendants, Wilson submitted a response to Margaret's *pendente lite* motion. (Pessah Aff. ¶ 4.)

On July 13, 2004, the state court ordered Wilson to make certain payments to Margaret during the pendency of the divorce action (the "July 13 Order"). (Pessah Aff. Ex. D.) The court noted that it "carefully read and examined the respective parties' net worth statements," and that its "decision [was] based upon the parties' respective financial needs and circumstances." (Pessah Aff. Ex. D.) The July 13 Order did not specifically mention Wilson's ownership of Westmoreland Stock. (*See id.*)

According to defendants, Wilson failed to comply with the state court order directing payments from Wilson to Margaret. (Pessah Aff. ¶ 4.) Thus, on July 23, 2004, Margaret submitted a "Demand for Arrears" to the court that sought $10,500 from Wilson based on his failure to pay maintenance and child support as set forth in the state court's July 13 Order. (Pessah Aff. Ex. E.) The Demand for Arrears was signed by Pessah as attorney for Margaret. (*Id.*) Thereafter, an "Income Execution" order was served on Wilson, on August 31, 2004, and on Wilson's employer, General Reinsurance Corp., on September 21, 2004. (Pessah Aff. Exs. F, G.). The Income Execution order directed Wilson's employer to withhold "wages, salary and commissions and/or income" from Wilson and "to pay same" to Margaret, and was signed by Pessah as attorney for Margaret. (Pessah Aff. Ex. F.)

C. The Instant Action

In the instant case, plaintiff alleges that Pessah and the Firm engaged in "premeditated deceitful behavior and gross professional misconduct" while representing Margaret in the divorce action. (Compl. ¶ 4.) Specifically, according to Wilson, defendants deceived the state court by asserting in the Net Worth Statement that plaintiff owned "Westmoreland stock" and by failing to offer evidence in support of that assertion. (Compl. ¶¶ 5, 19-26.) According to plaintiff, defendants' alleged misrepresentation was "intended to deceive the [state] court into granting motions for *pendente lite*, income execution [and] demand for arrears," and that, absent the alleged misrepresentation, such orders would not have been issued, or would have directed plaintiff to pay a smaller amount to Margaret. (Compl. ¶ 23.) Moreover, as liberally construed, the complaint also alleges that defendants' service

4

of the Income Execution order upon plaintiff's employer, and the alleged misrepresentations contained therein, resulted in plaintiff's firing from his job. (Compl. ¶ 5.)

II. DISCUSSION

A. Summary Judgment Standard

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

This standard also applies where, as here, the nonmoving party fails to oppose a summary judgment motion. However, the Second Circuit has noted that

where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.* 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). Thus, if the moving party fails to meet its burden, then "summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (internal quotations and citation omitted); *see, e.g., Players, Inc. v. City of New York*, 371 F. Supp. 2d 522, 535 n.10 (S.D.N.Y. 2005).

Moreover, the court may not rely solely on the moving party's statement of undisputed facts. Instead, the court "must be satisfied that the citation to evidence in the records supports the assertion[s]" made by the moving party. *Vermont Teddy Bear*, 373 F.3d at 244; *see Bakker v. New York City Dep't of Env. Prot.*, No. 03 Civ. 0356 (SJ), 2006 WL 3257238, at *6 (Sept. 28, 2006).

Finally, the Court notes that *pro se* litigants must be given "extra latitude, particularly on a summary judgment motion." *Bakker*, 2006 WL 3257238, at *6 (quoting *Thomas v. New York State Dep't of Corr. Servs.*, No. 00 Civ. 7163 (NRB), 2006 WL 435718, at *4 (S.D.N.Y. Feb. 23, 2006). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280

5

(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### B. New York Judiciary Law § 487

Plaintiff alleges that defendants knowingly deceived the state court in the underlying divorce action by falsely asserting in the Net Worth Statement that plaintiff owned "Westmoreland stock." (Compl. ¶¶ 5, 19-26.) Following a careful review of plaintiff's complaint, the exhibits attached thereto, and defendants' submissions, the Court finds that defendants have met their burden of demonstrating that no material issue of fact remains for trial.

New York Judiciary Law § 487 ("Section 487") provides, in relevant part, that

> An attorney or counselor who . . . [i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. Jud. L. § 487. "This law 'supports a civil action by a party to a litigation against the attorneys representing parties in the litigation, for any deceit or collusion practiced within New York's territorial borders on either the court or any party, and provides for a treble damage award in such an action.'" *Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196, 207 (S.D.N.Y. 2006) (quoting *Trepel v. Dippold*, No. 04 Civ. 8310 (DLC), 2005 WL 1107010, at *4 (S.D.N.Y. May 9, 2005)).

An attorney may be held liable under the statute for a "single act or decision, if sufficiently egregious and accompanied by an intent to deceive." *Id.* (quotations and citation omitted); *see Izko Sportswear Co., Inc. v. Flaum*, 809 N.Y.S.2d 119, 122 (N.Y. App. Div. 2006) ("A violation of Judiciary Law § 487 may be established either by the defendant's alleged deceit or by an alleged chronic, extreme pattern of legal delinquency by the defendant.") (quotations and citations omitted). However, a defendant is entitled to judgment as a matter of law as to a claim under Section 487 where she establishes that "there was no evidence of her intent 'to deceive, or a chronic, extreme pattern of legal delinquency that proximately caused the [plaintiff's] alleged damages.'" *Knecht v. Tusa*, 789 N.Y.S.2d 904 (N.Y. App. Div. 2006) (quoting *O'Connell v. Kerson*, 736 N.Y.S.2d 895, 896 (N.Y. App. Div. 2002)).

In this case, the Court finds that, drawing all reasonable inferences in favor of plaintiff, no reasonable trier of fact could find that defendants violated Section 487. Specifically, plaintiff fails to offer any evidence of a "knowing intent" on defendants' part to deceive the court or any other party involved in the underlying divorce action. *See Amalfitano*, 428 F. Supp. 2d at 209. There is no evidence in the record demonstrating that the information submitted to the state court in the Net Worth Statement was false or, even assuming *arguendo* that the information at issue was false, that defendants knew they were submitting false information. As such, the Court finds that plaintiff's wholly unsupported allegations of deceit cannot support a claim under Section 487 and must be dismissed. *See, e.g., Bastys v. Rothschild*, No. 97 Civ. 5154 (CM), 2000 WL 1810107, at *50 (S.D.N.Y. Nov. 21, 2000) (granting summary judgment where "[p]laintiff has

pointed to no evidence from which a reasonable juror could infer that [defendant] intended to deceive [p]laintiff or the [c]ourt in the matrimonial action"); *Frank v. Pepe*, 717 N.Y.S.2d 873, 878 (N.Y. Sup. Ct. 2000) (finding that, at the summary judgment stage, an unsupported allegation of deceit "fails to establish as a matter of law any intentional behavior on the part of the defendant").

Moreover, "in order to successfully maintain a claim under [Section 487], it is essential to establish damages caused by the deceit." *Amalfitano*, 428 F. Supp. 2d at 207 (citing *Feldman v. Jasne*, 742 N.Y.S.2d 540 (N.Y. App. Div. 2002)). In this case, the Court finds that the record does not offer any support for the existence of a causal connection, or "nexus," between the specific misrepresentation alleged in the complaint and the injuries allegedly suffered by plaintiff. *See, e.g., Werner v. Katal Country Club*, 650 N.Y.S.2d 866, 869 (N.Y. App. Div. 1996).

According to the Complaint, all of the injuries suffered by plaintiff arise from defendants' misrepresentation in the Net Worth Statement, and the effect that the misrepresentation had upon the state court. The chain of causation allegedly proceeds as follows: defendants deceived the state court as to plaintiff's ownership of Westmoreland Stock. The state court relied on defendants' assertion and issued its July 13 Order directing plaintiff to make certain payments. Plaintiff failed to make those payments. Defendants submitted a Demand for Arrears on behalf of Margaret to recover the unpaid monies, and also served an Income Execution order on plaintiff's employer. Finally, plaintiff was fired by his employer because the service of the Income Execution order placed plaintiff in an "adversarial position" with his employer.

The Court finds that, even assuming *arguendo* that defendants intentionally deceived the state court as to plaintiff's assets, no reasonable factfinder could find that the deceit caused plaintiff's injuries. There is nothing in the record to suggest that the alleged deceit caused the state court to order plaintiff to make payments to Margaret or served to increase the amount of those payments. The state court's July 13 Order did not specifically rely on plaintiff's asserted ownership of "Westmoreland stocks." Moreover, the Net Worth Statement asserted that plaintiff and Margaret *each* owned an "unknown" number of shares. As such, the alleged deceit, by itself, did not go toward the *relative* "financial needs and circumstances" of Margaret and plaintiff, but rather, if it did anything, served only to inflate the net worth of *both* Margaret and plaintiff. Thus, there is nothing in the record to indicate that, absent the alleged deceit, the state court would not have reached exactly the same conclusion as to "the parties' respective financial needs and circumstances." *See Werner*, 650 N.Y.S.2d at 869 & n.4 (finding summary judgment appropriate where there was "nothing in the record to indicate that, had [the defendant] not acted as he allegedly did," plaintiff would not have suffered the same alleged injuries); *see, e.g., Lazer Elec. Corp. v. Cecchi*, No

C. Other Forms of Relief

Plaintiff seeks to have this Court compel the State of New York Grievance Committee for the Tenth Judicial District to take disciplinary action against defendants. The Court declines to refer the question of whether defendants committed an ethical violation to this Court's, or any other court's, grievance committee because, as discussed above, plaintiff has failed to offer any evidence that defendants committed an ethical violation.

*Cf. W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) ("If [counsel] is guilty of professional misconduct, as to which we express no view, the appropriate forum is the Grievance Committee."). Moreover, to the extent that plaintiff seeks money damages for violations of the New York Code of Professional Responsibility, or sanctions against defendants for said violations, the Court finds no basis to grant such relief.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Plaintiff's claims are dismissed. The Clerk of the Court shall close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 8, 2007
Central Islip, New York

\* \* \*

Plaintiff Bruce Wilson appeared *pro se*. The attorneys for defendants are Gary H. Tabat and Michelle J. Pessah, Esqs., Tabat Cohen & Blum LLP, 500 Montauk Highway, Suite N, West Islip, New York 11795.